UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
                                       )    **JUDGE RICHARD L. SPEER**
Richard Osterwalder )
                                       )    Case No. 07-30139
     Debtor(s) )
                                       )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the Trustee for Turnover, the Debtor's Objection Thereto, and the Trustee's Reply to the Debtor's Objection. (Doc. No. 236, 237 & 240). An evidentiary Hearing was held on this matter, after which time the Court deferred ruling on the matter so as to afford time to fully consider all of the evidence presented in this case. The Court has now had this opportunity, and finds, for the reasons now set forth, that the Trustee's Motion for Turnover should be Granted to the extent set forth in this Decision.

## DISCUSSION

The Motion brought by the Trustee before the Court seeks the turnover of a variety of property – *e.g.*, tax returns, inventory lists, and information regarding stocks. However, both the objection interposed by the Debtor, as well as the evidence produced at the Hearing, were limited to that part of the Trustee's Motion concerning the turnover of various animal mounts. (Doc. No. 237). As such, those other aspects of the Trustee's Motion for Turnover will be granted without further comment, with the following discussion being confined solely to the issue of the animal mounts.

The Trustee's Motion for the Turnover of the animal mounts is brought pursuant to § 542. (Doc. No. 1). Paragraph (a) of this provision provides:

In re Richard Osterwalder
Case No. 07-30139

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The adjudication of matters concerning the turnover of estate property are deemed to be core proceedings over which this Court has the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(E).

Subject to certain exceptions, § 542(a) requires an entity in possession of property which the trustee can use, sell or lease, or which the debtor may claim as exempt, to deliver that property to the trustee. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 202-03, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983). Generally, a trustee can only use or sell property of the estate. 11 U.S.C. § 363(b)(l). Likewise, a debtor may only exempt property of the estate. 11 U.S.C. § 522(b)(1). Thus, although not specifically stated in § 542, fundamental to the concept of "Turnover" is that the asset to be turned over must be property of the debtor's bankruptcy estate. *In re Bracewell*, 454 F.3d 1234, 1243 (11th Cir. 2006).

Property of the estate, as defined in § 541(a)(1) of the Bankruptcy Code, comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition of estate property is broad and will reach to bring within the estate every conceivable interest that the debtor may have in property. *Demczyk v. The Mutual Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997). It does not matter whether the interest is future, possessory, contingent, speculative or derivative; they all are interests that are swept up by the broad reach of § 541(a). *In re Hanley*, 305 B.R. 84, 86 (Bankr. M.D.Fla. 2003).

Page 2

**In re Richard Osterwalder**
**Case No. 07-30139**

At issue in this matter are 22 animal mounts. At the time he filed for bankruptcy relief, all of these animal mounts were in the possession and/or control of the Debtor, Mr. Richard Osterwalder. In this regard, the Debtor did not actively contest, and the evidence shows, that all of the animal mounts were located at either, (1) a business owned solely by the Debtor, (2) a storage facility related to the Debtor's business, or (3) at the Debtor's home.

Of the 22 animal mounts under his possession and/or control, the Debtor acknowledged that he was the sole owner of seven: (1) a Full Body, Alaskan Moose; (2) a Shoulder Mount Alaskan Moose; (3) an Alaskan Brown Bear and Black Bear; (4) an Alaskan Wolf; (5) a Colorado Mountain Lion Elk and Mule Deer; (6) a Wyoming Antelope; and (7) a Wild Boar Head. (Tr. Ex. No. 5, pg. 8). Accordingly, in accordance with Bankruptcy Code § 541 and § 542, *supra*, the Debtor's obligation to turn these items of property over to the Trustee cannot be construed as being in dispute. For the remaining 15 animal mounts, however, the Debtor asserted that, despite his possession and control of the mounts, they are not subject to the Trustee's Motion for Turnover because the mounts are actually owned by third-parties, and not himself. Before addressing the merits of this position, the legal basis for this defense is now outlined.

Pursuant to 541(a), only a debtor's interest in property, not the actual property, becomes included in a debtor's bankruptcy estate. The filing of a bankruptcy petition does nothing to expand or change a debtor's interest in property. Instead, it merely substitutes the trustee, whom the Code deems to be 'the representative of the estate,' as the party who holds that interest. 11 U.S.C. § 323(a). The estate's interest in property, however, remains identical to and also limited to those interests held by the debtor when the petition was filed. Whatever rights a debtor had at the commencement of the case continue into bankruptcy–no more, no less. *French, Trustee v. M.A. Johnson (In re Coomer)*, 375 B.R. 800, 804 (Bankr. N.D.Ohio 2007). As has been often stated, a property interest which is limited in the hands of a debtor is equally limited in the hands of a trustee. *Demczyk v. The Mutual Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997).

Page 3

In re Richard Osterwalder
Case No. 07-30139

From this, it follows that if the Debtor is not the owner of the 15 remaining animal mounts, as he asserts, the Trustee's interest in these mounts would take subject to the claims of the third-party owners. This, in turn, would deprive the Trustee of the right to liquidate the mounts as sought. It is fundamental that a transferor of property can legally transfer no greater interest in property than what he possesses. *In re Williams Brothers Asphalt Paving Co.*, 59 B.R. 71, 75 (Bankr. W.D.Mich. 1986). Taken then to the next level, the absence of a right to liquidate the mounts would afford the Debtor with an absolute defense against the Trustee's Motion for Turnover. Section 542(a) provides that an entity is not required to deliver to the trustee property which "is of inconsequential value or benefit to the estate."

As taken from the evidence presented in this matter, it is the Debtor's position that the following 15 animal mounts, although under his possession and control at the time of the filing of his bankruptcy petition, are owned by these respective third parties:

| | |
|---|---|
| Carl K. Miller, acquaintance of Debtor | Full Body Elk |
| Brian Osterwalder, son of the Debtor | Alaskan Mountain Goat<br>Colorado Elk<br>Alaskan Black Bear<br>Canadian Caribou |
| Dorothy Osterwalder, wife of the Debtor | Alaskan Fox<br>Alaskan Brown Bear<br>Alaskan Black Bear<br>Alaskan Caribou |
| Jeff Mangus, acquaintance of Debtor | Beaver |

Page 4

**In re Richard Osterwalder**
**Case No. 07-30139**

      Route 53 Recreation,                    Blesbok
      Business owned by the Debtor      Black Buck
                                                         Gazelle
                                                         Gemsbok
                                                         Red Stag

(Tr. Ex. No. 5, pg. 2). It is the position, however, of the Trustee that evidence is lacking with regards to the ownership of the above 15 animal mounts, and thus the mounts should be assumed to be owned by the Debtor. In the words of the Trustee, "it is imperative that the Debtor provide credible evidence of the number, type and ownership of the animal mounts in his possession." (Doc. No. 240, at pg. 2).

        The question as to the nature, existence and extent of the Debtor's interest in the 15 animal mounts, *supra*, is determined by reference to applicable nonbankruptcy law, in this case Ohio law. *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979). As argued by the Trustee, under Ohio law a presumption arises that one, such as the Debtor, in legal possession of personal property is the owner of the property. *See In re Lowry's Estate*, 40 N.E.2d 459 (Ohio Ct.App.1941), *aff'd*, 42 N.E.2d 987 (Ohio 1942); *Village of Lakeville v. City of Conneaut*, 144 N.E.2d 144, 149 (1956). Once in existence, the presumption may be rebutted with evidence demonstrating to the contrary. *Id*. Beginning with Mr. Carl Miller, and his claim to the Full Body Elk, the weight and sufficiency of this evidence in rebuttal is now addressed.

        It is not disputed that at the time he filed for bankruptcy relief, the Full Body Elk, as claimed by Mr. Miller, was physically located at the Debtor's business, Route 53 Recreation, Inc. Despite this, the Debtor, both personally and through his business, disavowed any ownership in the mount. In doing so, the Debtor explained that Mr. Miller had lent the mount to his business for the purpose of displaying it to the public.

Page 5

In re Richard Osterwalder
Case No. 07-30139

As an initial evidentiary matter, the Debtor's explanatory testimony cannot, by itself, be afforded any appreciable weight. Besides the self-serving nature of the testimony, the Court found the Debtor's testimony throughout the Hearing to be both elusive and unforthcoming. As such, the Debtor's account, standing alone, is insufficient to rebut the presumption that he is the owner of the Elk.

Notwithstanding, the Debtor's account was corroborated by Mr. Miller who explained, convincingly, that he personally hunted the Elk, shooting it in the year 2000. The Debtor's account also carries with it an air of plausibility. While in operation, the Debtor's business, Route 53 Recreation, sold hunting supplies. Mr. Miller and the Debtor are also acquaintances. As such it does not strike this Court as too far out of the ordinary that Mr. Miller would lend to an acquaintance's business, a piece of property which could be used for display purposes.

Therefore, in light of the plausibility of the Debtor's account, together with the corroborating and persuasive testimony provided by Mr. Miller, the Court, although finding it a close call, is persuaded that the presumption regarding the Debtor's ownership of the Full Body Elk has been rebutted. Consequently, as no additional evidence was offered to the contrary, ownership of the Elk is held to belong to Mr. Miller, not the Debtor, and thus the Trustee has no right to liquidate Mr. Miller's Elk. The next matter now addressed concerns the Debtor's son, Brian Osterwalder.

According to the Debtor, his son is the rightful owner of four animal mounts. For this position, the Debtor explained that, although the mounts were physically located at either his home or a storage facility, this arrangement existed as an accommodation for his son who did not have sufficient room to store the mounts. To corroborate his account, the following evidence was offered: (1) a letter addressed to "whom it may concern" from Brian Osterwalder claiming ownership of the mounts, (Ex. No. 5, at pg. 3); (2) a newspaper article from 1998 wherein Brian Osterwalder is quoted as having shot a mountain goat and a moose on a hunting trip to Alaska, (Ex. B.); and (3) pictures

Page 6

**In re Richard Osterwalder**
Case No. 07-30139

of Brian Osterwalder with various animals felled after recent hunts. (Ex. D). Upon consideration of this supporting evidence, however, the Court, unlike the situation with Mr. Miller, is not persuaded that the evidence satisfactorily corroborates the Debtor's account.

First, the letter from Brian Osterwalder cannot be afforded any weight. It is hearsay, being offered to prove the truth of the matter asserted. FED.R.EVID. 801(c). In this way, application of the hearsay rule is particularly suited here where, Brian Osterwalder, despite the issuance of a subpoena,[1] did not appear as a witness at the Hearing, thus making it impossible to subject his statement in the letter to cross-examination. *See, e.g., Olson v. Ford Motor Co.*, 410 F.Supp.2d 855, 860 (D.N.D. 2006) ("purpose of the hearsay rule is to exclude declarations whose veracity cannot be tested by cross-examination.").

Similarly, without his testimony, the newspaper article and pictures offered to support Brian Osterwalder's claim of ownership in the mounts are weak. While undoubtably this evidence shows that Brian has hunted animals which are like those for which it is claimed he is the owner, it does nothing to corroborate the underlying point made by the Debtor: that his son was storing the mounts on his property because of a lack of space. Accordingly, given these weaknesses, along with the lack of credibility which can be afforded to the Debtor's testimony in isolation, the presumption of ownership which exists in the Debtor has not been rebutted. As such, the Trustee is entitled to the turnover of the mounts for which it is claimed that Brian Osterwalder is the owner. As now explained, the result is the same for Mrs. Osterwalder, whose situation with regards to the animal mounts closely mirrors that of Brian.

---

[1] (Doc. No. 279). Failure to obey a subpoena is punishable as a contempt of the issuing court. FED.R.BANKR.P. 9016(e).

Page 7

**In re Richard Osterwalder**
**Case No. 07-30139**

It is claimed by the Debtor that his wife, Dorothy Osterwalder, owns four of the animal mounts in his possession. However, Mrs. Osterwalder, despite also being issued a subpoena, did not testify regarding her alleged ownership interest in the mounts. (Doc. No. 280). Instead, to corroborate the Debtor's account, statements purportedly written by Mrs. Osterwalder were offered as evidence. These statements explained that Mrs. Osterwalder owned four of the animal mounts because (1) she had paid for her husband's hunting trips during which time the animals were felled, and/or (2) she paid for the animal's mounting. (Ex. 6; Ex. C).

Yet, as was the situation with Brian, these statements are clearly hearsay, and thus for the same reasons, cannot be afforded any appreciable evidentiary value. Even so, the explanations provided in the written statements do not stand up to scrutiny. First, the Court is unaware of any legal tenet which holds that, where one pays for another's trip/vacation, property acquired by the payee during the trip belongs to the payor. Second, the assertion that Mrs. Osterwalder, alone, paid to have the animals mounted would appear to be incorrect – a cancelled check, offered as evidence of this, was made on a joint account in the name of both Mrs. Osterwalder and the Debtor, not just Mrs. Osterwalder. (Ex. 5, at pg. 5).

The next issue before the Court – the claim of ownership by Jeff Mangus in a beaver mount – follows the same pattern. No credible evidence was offered to corroborate the Debtor's account that Mr. Mangus is the owner of the beaver mount. Thus, consistent with those prior determinations regarding Brian and Dorothy Osterwalder, the Court finds that the Debtor is the owner of the beaver mount, thereby entitling the Trustee to the turnover of the property.

The final matter concerning the ownership of the mounts held by the Debtor involves those for which it is claimed that the Debtor's business, Route 53 Recreation, is the owner. The facts in this regard show that, at the time he filed bankruptcy, the Debtor was the sole shareholder of Route 53. As a result, it is clear that the Trustee is entitled to exercise, with respect to this company, all

Page 8

those right which the Debtor could have exercised as the sole shareholder. *Smith v. Friskney (In re Friskney)*, 282 B.R. 250, 253 (Bankr. M.D.Fla. 2002).

It is well-settled, however, that assets wholly owned by a corporation are not included in the bankruptcy estate of an individual shareholder. *In re Billingsley*, 338 B.R. 372, 375-76 (Bankr. C.D.Ill. 2006). It is also settled that, as against corporate assets, claims held by the corporation's creditors must be satisfied ahead of those of the corporation's shareholders. 12 Ohio Jur.3D *Business Relationships* § 987 (2008). As a result, due process requires that any creditors of Route 53 Recreation be afforded the opportunity to be heard on the Trustee's Motion for Turnover.

To this end, the Trustee will be afforded time to assess the situation. However, during the interim, as the Trustee stands in the shoes of the Debtor, the Court finds that the Trustee is the party best suited to hold the mounts until such a time as an ownership determination can be made. Thus, turnover will be ordered in the Trustee's favor with respect to the mounts claimed by the Debtor's corporation, Route 53 Recreation.

Before concluding, one final issue needs to be considered. Besides the issue of ownership, the Debtor also argued, in defense of the Trustee's Motion for Turnover, that all of the mounts, including those he owns, are of no value to the estate because the "sale of the mounts is prohibited under the Lacey Act, 16 U.S.C. Section 3371-3378." (Doc. No. 237). Generally, the Lacey Act "proscribes the transportation of wildlife killed in violation of federal laws and the interstate transportation of wildlife killed in violation of state or foreign laws." 38 C.J.S. Game § 41 (2008). However, whatever its applicability, interposing this Act as a defense to the Trustee's Motion for Turnover is improper.

It is the bankruptcy trustee who is deemed to be the legal representative of a debtor's bankruptcy estate. 11 U.S.C. § 323(a). It is also the trustee who is charged with collecting and

In re Richard Osterwalder
Case No. 07-30139

reducing to money, as expeditiously as possible, property of the estate. 11 U.S.C. § 707(a)(1). Consequently, for those mounts determined herein to be property of the Debtor's estate, the applicability of the Lacey Act, and its potential effect on the sale of the mounts, is a determination for the Trustee, and only the Trustee, to make.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 542(a), the Trustee's Motion for Turnover is Granted to the extent provided in this Decision.

**IT IS FURTHER ORDERED** that, except as provided in this Decision, the Debtor shall be required to turnover to the Trustee all the property, or the value of such property, sought by the Trustee in her Motion for Turnover. This property includes all of the animal mounts sought by the Trustee with the exception of the Full Body Elk which has been determined to be owned by Carl K. Miller.

Dated: March 14, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 14th day of March, 2008 to:

Richard E Osterwalder
2253 S. County Rd. 591
Tiffin, OH 44883

Louis J Yoppolo
300 Madison Avenue, #1200
Toledo, OH 43604

Ericka S Parker
33 S. Michigan, #203
Toledo, OH 43604

Patricia B Fugee
One SeaGate, #1700
Toledo, OH 43604

Amy L Good
201 Superior Ave, #441
Cleveland, OH 44114

John J Hunter, Jr.
1700 Canton Ave, #1
Toledo, OH 43604

Teresa Davidson
7025 Albert Pick Rd.
Greensboro, NC 27409

Gregory Stout
801 W. Jefferson
Louisville, KY 40202

Raymond L Beebe
1107 Adams St
Toledo, OH 43604

Karl C. Kerschner
P.O. Box 400
Tiffin, OH 44883

Reuel D. Ash
600 Vine St., #2800
Cincinnati, OH 45202

    /s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court